Argued and submitted February 14, on appeal, appeal against Bank of Newport dismissed, award of sanctions reversed and judgment otherwise affirmed; on cross-appeal, affirmed April 25, reconsideration denied June 20, petition for review allowed July 31, 1990 (310 Or 205)

WHITAKER et ux,
*Appellants - Cross-Respondents,*

*and*

EVERHART,
*Appellant - Cross-Respondent,*

*v.*

BANK OF NEWPORT,
*Respondent,*

*and*

THIEL CREEK DEVELOPMENT COMPANY et al,
*Respondents - Cross-Appellants.*

(88-1891; CA A50177)

790 P2d 1170

Michael E. Swaim, Salem, argued the cause for appellants - cross-respondents. With him on the briefs was Swaim & Betterton, P.C.

No appearance for respondent The Bank of Newport.

J. Philip Holcomb, Portland, argued the cause for respondents - cross-appellants. With him on the brief was Aitchison, Snyder & Hoag, Portland.

Before Joseph, Chief Judge, and Riggs and Edmonds, Judges.

## JOSEPH, C. J.

Plaintiffs brought this action against Thiel Creek Development Company, Gary V. Diers, one of its officers (defendants), and the Bank of Newport (Bank), alleging that Bank had intentionally inflicted emotional distress on them and breached its fiduciary duty and that defendants and Bank had engaged in a conspiracy against plaintiffs. The trial court dismissed the claim against defendants on *res judicata* grounds and awarded them sanctions under ORCP 17 against plaintiffs and Everhart, their attorney.[1] It then entered judgment for defendants under ORCP 67B. Plaintiffs appeal and challenge both the dismissal and the award of sanctions. Defendants cross-appeal, arguing that the amount of the sanctions is inadequate. We dismiss on the appeal against Bank,[2] affirm the dismissal of the claims against defendants, reverse the award of sanctions and affirm on the cross-appeal.

In June, 1987, plaintiffs and defendants[3] agreed to an exchange of property. Among the terms of the exchange was that defendants would pay for construction of buildings on the property that plaintiffs were to receive that would be comparable to the buildings on the property that they were to

---

[1] ORCP 17 provides, in pertinent part:

"**A. Signing by party or attorney; certificate.** Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record who is an active member of the Oregon State Bar. * * * The signature constitutes a certificate that the person has read the pleading, motion or other paper, that to the best of the knowledge, information and belief of the person formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose * * *.

"* * * * *

"**C. Sanctions.** If a pleading, motion or other paper is signed in violation of this rule, the court upon motion or upon its own initiative shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee."

[2] No judgment has been entered against Bank. Even so, it was named a respondent in the appeal.

[3] Plaintiffs do not assert that there is any basis for holding defendant Diers personally liable for his actions as an officer of Thiel Creek Development Company, and they do not seek any damages from him in the prayer of the complaint. Although defendants point out that fact in their brief, they do not argue that it provides support for the award of sanctions.

convey. Plaintiffs began building the improvements, and defendants made progress payments until August, when they stopped, claiming that the agreement did not require them to pay any more until the exchange transaction would close in December, 1987. Plaintiffs demanded that defendants continue to pay in accordance with plaintiffs' understanding of the agreement. At defendants' suggestion, plaintiffs also sought financing from Bank in order to complete the work during good weather.

Negotiations with Bank were unsuccessful, and in October, 1987, plaintiffs filed an action for a declaration of defendants' obligations under the agreement and for rescission *(Whitaker I)*. The parties settled that case, with defendants paying plaintiffs what plaintiffs believed that defendants owed them. Later, plaintiffs filed this action *(Whitaker II)*, asserting that, during the unsuccessful loan negotiations, Bank and defendants had entered into a conspiracy to force plaintiffs to modify the terms of the exchange agreement to defendants' advantage. Every part of the alleged conspiracy occurred before plaintiffs filed *Whitaker I*. Defendants moved in *Whitaker II* for summary judgment on the conspiracy allegations on *res judicata* grounds. The court granted the motion.

*Res judicata* bars "a plaintiff who has prosecuted one action * * * to a final judgment * * * from prosecuting another action against the same defendant, [if] the claim in the second action is one which is based on the same factual transaction that was at issue in the first * * * and is of such a nature as could have been joined in the first action." *Rennie v. Freeway Transport,* 294 Or 319, 323, 656 P2d 919 (1982); *First Interstate Bank v. Haynes,* 87 Or App 700, 703, 743 P2d 1139 (1987). The basic question is whether the contract claim in *Whitaker I* arose from the same factual transaction as the tort claim in *Whitaker II.*

■    Older definitions treated a "cause of action" as consisting of a single claim, defined by the legal rights and obligations and the parties involved. In *Rennie* and two earlier cases, *Troutman v. Erlandson,* 287 Or 187, 598 P2d 1211 (1979), and *Dean v. Exotic Veneers, Inc.,* 271 Or 188, 531 P2d 266 (1975), the Supreme Court adopted a modern theory of the scope of a

claim, approving the statement in *Restatement (Second) Judgments,* which relies largely on the factual connections between the claims asserted in the separate actions and the procedural practicality of bringing them in one case. *See Andrews v. Christenson,* 71 Or App 442, 444-46, 692 P2d 687 (1984), *rev den* 299 Or 37 (1985). As a result, it may not be as easy as it once was to determine whether separate legal theories are part of one claim, and it may not always be possible to determine whether the second case involves the same claim as the first until the second pleading is actually filed.

*Restatement (Second) Judgments,* § 24(2), provides:

"What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

The comment to section 24, which the Supreme Court quoted in *Troutman v. Erlandson, supra,* 287 Or at 206-07,[4] expands on the concept:

"The expression 'transaction, or series of connected transactions,' is not capable of a mathematically precise definition; it invokes a pragmatic standard to be applied with attention to the facts of the cases. And underlying the standard is the need to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim.

"* * * * *

"In general, the expression connotes a natural grouping or common nucleus of operative facts. Among the [relevant] factors * * * are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proof in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is substantial overlap, the second action should

---

[4] The Supreme Court actually quoted the comment in Tentative Draft No. 5 to proposed § 61. That section is now § 24, and the Comment that the court quoted is identical to the present Comment to § 24.

ordinarily be held precluded. But the opposite does not hold true: even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series." (Italics deleted.)

In *Whitaker I,* plaintiffs sought to recover damages or to rescind as a result of defendants' alleged breach of the contract. The primary operative facts were the making of the contract and defendants' performance or lack of performance. In *Whitaker II,* plaintiffs allege that, when they tried to arrange a loan to protect themselves from the result of defendants' breach, defendants and Bank conspired to damage them. The relationship between the two sets of allegations somewhat resembles the situations in illustrations 7 and 8 to section 24 of the *Restatement.*[5]

In *Whitaker II,* as in the illustrations, defendants allegedly engaged in activity after entering into the contract, and after breaching it, that constituted a tort. However, in the illustrations, the tort occurred after the plaintiffs' rights under the contract were complete. Here, the alleged tort occurred during the course of performance of the contract and was related to it. Plaintiffs' efforts to get a loan might well have been relevant in *Whitaker I,* at least to show what they had done to mitigate their damages. There would, presumably, have been some overlap of witnesses. Much more significantly, plaintiffs' efforts to get a loan were part of the series of transactions that began with the agreement to exchange property and that required defendants to pay for contracting buildings on the property that plaintiffs were to receive. Given the "natural grouping or common nucleus of operative facts," plaintiffs could and should have brought the claims together. Plaintiffs argue that they needed to get the contract issues resolved quickly in order to protect their property from the winter rains and, therefore, that it was not practical to bring the conspiracy claim with the contract claim. Even assuming that the record supports that argument, there is no reason

---

[5] In illustration 7, B owes A $500 on an obligation that matured on February 1. On June 1, A tries to collect and B assaults A. According to the *Restatement,* A may maintain separate actions on the contract and the assault claims. In illustration 8, A is discharged from employment by B for incompetence. A year later, B tells a prospective employer that A is a habitual drunkard. Again, A's wrongful discharge and defamation actions are separate.

that plaintiffs could not have brought all of their claims at one time and asked the court to sever them for trial as necessary.

■     Although we affirm the summary judgment, the record does not support the imposition of sanctions. The *Restatement* comment suggests that determining what is a single claim under the modern rule requires a "delicate balance" between the interests of the defendant and the plaintiff that includes the consideration of several factors, no one of which is determinative. Striking that balance will often not be an easy task, and the answer will not always be obvious. In *Whitaker II,* plaintiffs seek damages of a different kind and for different actions, including actions by a defendant who was not a party to the exchange contract, from those that they sought in *Whitaker I.* Although we hold that the cases are sufficiently connected that they ought to have been brought at one time, plaintiffs had a reasonable basis for believing that they were separate claims. Maintaining the second action was not frivolous or abusive, which some federal courts require for the imposition of sanctions under the comparable provisions of FRCP 11. *See, e.g., Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F2d 1531 (9th Cir 1986).

Under ORCP 17A, an attorney's signature on a complaint constitutes a certificate that, to the best of the attorney's belief formed after reasonable inquiry, the complaint is well grounded in fact and warranted in law. There was a reasonable argument that *res judicata* did not bar the second action. The trial court erred in finding otherwise.

Because of our resolution of the sanction issue on appeal, we affirm on the cross-appeal.

On appeal, appeal against Bank of Newport dismissed, award of sanctions reversed and judgment otherwise affirmed; on cross-appeal, affirmed.