Argued and submitted October 11, 1990, decision of the Court of Appeals affirmed July 9, 1992

John A. WHITAKER
and Sally Whitaker,
*Petitioners on Review,*
*and*

Rodney P. EVERHART,
*Appellant - Cross-Respondent,*

*v.*

THE BANK OF NEWPORT,
*Respondent,*
*and*

THIEL CREEK
DEVELOPMENT COMPANY,
and Gary V. Diers,
*Respondents on Review.*

(CC 88-1891; CA A50177; SC S37191)

836 P2d 695

Michael E. Swaim, of Swaim & Betterton, P.C., Salem, argued the cause and filed the petition for petitioners on review.

J. Phillip Holcomb, Portland, argued the cause for respondents on review.

GILLETTE, J.

## GILLETTE, J.

The issue in this case is whether plaintiffs' claim against defendants for "conspiracy" is barred on the ground of claim preclusion. The trial court concluded that it was and granted defendants' motion for summary judgment. The Court of Appeals affirmed. *Whitaker v. Bank of Newport*, 101 Or App 327, 790 P2d 1170 (1990). We also affirm.

On review of defendants' summary judgment motion, we review the facts in the light most favorable to plaintiffs, the persons against whom summary judgment was granted. *Computer Concepts, Inc. v. Brandt*, 310 Or 706, 709, 801 P2d 800 (1990). Plaintiffs pleaded the following facts in their complaint: They entered into a written agreement to exchange real property with defendant Thiel Creek Development Company (Company). Defendant Gary Diers was an officer of Company. The agreement provided that plaintiffs would construct buildings on the property that they received and that Company would make periodic cash advances to cover the cost of construction as it progressed.

Plaintiffs commenced construction. Company made periodic payments until late August, 1987, when it abruptly stopped paying. Plaintiffs informed their bank, defendant Bank of Newport (Bank), of their agreement with Company and of Company's cessation of payments. Plaintiffs told Bank that Company's failure to pay had caused them financial difficulties, because they lacked funds to pay their accrued construction costs and costs that they would incur in weatherizing the buildings against the winter rains.

In early September, 1987, Bank proposed a lending agreement to plaintiffs. Plaintiffs found that agreement unacceptable and instead asked Bank to lend them $60,000 to pay their accrued costs. A few weeks later, Bank proposed another agreement, which also was unacceptable to plaintiffs. Plaintiffs contend that the effect of the second proposed agreement would have been to vary the terms of their agreement with Company in a manner that was extremely advantageous to Company and Bank and disadvantageous to plaintiffs. Plaintiffs allege that Bank attempted to force them to accept that proposal, but that plaintiffs refused.

Plaintiffs then filed an action (*Whitaker I*) against Company and Diers, seeking a declaratory judgment as to the parties' rights under the contract, specific performance, and injunctive relief. Later, plaintiffs amended the complaint to request rescission of the contract and a money judgment.

In the amended complaint in *Whitaker I*, plaintiffs alleged some of the same facts that are alleged in the complaint in the present case, *viz.*, the facts about the contract and its breach by Company and Diers. Additionally, plaintiffs alleged that Company and Diers assured plaintiffs that they timely would make payments, but never paid.

On the date set for trial in *Whitaker I*, the parties settled the case, with Company agreeing to pay the full contract price.[1] Thereafter, plaintiffs moved the court for an order dismissing *Whitaker I* with prejudice, because defendants had paid the amount that plaintiffs had demanded. The court entered an order dismissing the action with prejudice.

Several months later, plaintiffs brought the present action (*Whitaker II*) against Bank, Company, and Diers. Their complaint contained three claims for relief. The first two claims prayed for relief against Bank for intentional infliction of emotional distress and for breach of fiduciary duty. Those claims are not at issue here.[2]

Plaintiffs' third claim for relief is entitled "conspiracy." It alleges that Diers, Bank, and Company entered into a conspiracy to vary the terms of the agreement between plaintiffs and Company. Plaintiffs contend that this conduct was "outrageous" and caused them "extreme emotional distress." Plaintiffs seek damages for their alleged emotional distress, as well as punitive damages.

Company and Diers moved for summary judgment on the third claim for relief on the ground that the action

---

[1] There is no written settlement in the record, but the parties recount that the court reporter transcribed the settlement agreement.

[2] This case concerns only the motion for summary judgment by defendants Company and Diers on the third claim for relief. Bank, although a defendant in *Whitaker II*, is not a party in this appeal. At the time that plaintiffs appealed the trial court's grant of summary judgment in favor of Company and Diers, plaintiffs' claims against Bank had not yet been tried. Nothing that we say here affects plaintiffs' claims against Bank.

against them was barred by the doctrine of claim preclusion. The trial court granted the motion for summary judgment, finding that there was no genuine issue as to any material fact and that defendants were entitled to judgment as a matter of law. The court then entered judgment pursuant to ORCP 67B. On plaintiffs' appeal, the Court of Appeals affirmed.

We consider both the relevant statute and common law concerning claim preclusion. *See Van De Hey v. U.S. National Bank*, 313 Or 86, 90, 829 P2d 695 (1992) (the doctrine of claim preclusion has developed in this state as both statutory and common law, and both are viable). ORS 43.130, the statute concerning claim preclusion, provides in part:

"The effect of a judgment, decree or final order in an action, suit or proceeding before a court or judge of this state or of the United States, having jurisdiction is as follows:

"* * * * *

"(2)  * * * [T]he judgment, decree or order is, in respect to the matter directly determined, conclusive between the parties * * * litigating for the same thing, under the same title and in the same capacity."

Plaintiffs do not dispute that the settlement and consequent judgment dismissing with prejudice the claims in *Whitaker I* was a final judgment in a proceeding before a court having jurisdiction. ORS 43.130(2). They dispute whether the present case concerns the "matter directly determined" in the earlier case. We agree that the case does not concern such matters — neither the allegations nor the settlement in *Whitaker I* involved any activities in which Bank participated. ORS 43.130(2) is not implicated here.

The common law doctrine of claim preclusion is broader. It prohibits a plaintiff who has prosecuted an action against a defendant and obtained a final judgment from prosecuting another action against the same defendant

" '[w]here the claim in the second action is * * * based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.' *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982)."

*Van De Hey v. U.S. National Bank, supra,* 313 Or at 91 (quoting *Drews v. EBI Companies,* 310 Or 134, 140, 795 P2d 531 (1990)). Plaintiffs do not dispute that, in *Whitaker II,* they seek a remedy that is additional to the one sought in *Whitaker I* or that they could have joined the claim in *Whitaker II* in the first action.[3] The sole issue, then, is whether the claim in *Whitaker II* is based on the same factual transaction as the claims in *Whitaker I.*

■    The "same factual transaction" can be either a single transaction or a connected series of transactions. *Drews v. EBI Companies, supra,* 310 Or at 141 (quoting *Rennie v. Freeway Transport, supra,* 294 Or at 324). There are two transactions involved here: (1) the breach of the contract and (2) the conspiracy to force plaintiffs into a subsequent agreement that effectively would alter the terms of the contract. We must determine whether those transactions are a "connected series."

In *Troutman v. Erlandson,* 287 Or 187, 205-10, 598 P2d 1211 (1979), this court applied criteria from the Restatement (Second) of Judgments § 24 in determining what factual groupings constitute a connected series of transactions for claim preclusion purposes:

" '(2)    [W]hat groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as *whether the facts are related in time, space, origin, or motivation,* whether they *form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' "[4]

The court stated:

" 'When a defendant is accused of successive but nearly simultaneous acts, or *acts* which though occurring over a period of time were *substantially of the same sort and similarly motivated,* fairness to the defendant as well as the

---

[3] Plaintiffs' attorney conceded in the summary judgment hearing that:

"[The claim in *Whitaker II]* could have been brought in *Whitaker I* if we hadn't had the press of time to go against the other party to the contract. We were pressed for time."

[4] The court cited Tentative Draft No. 5 of the Restatement (Second) of Judgments, § 61 (1978), because the official version of the Restatement (Second) of Judgments had not yet been published. The passage that the court quoted became part of Restatement (Second) of Judgments § 24.

public convenience may require that they be dealt with in the same action. The events constitute but one transaction or a connected series.' "

*Troutman v. Erlandson, supra,* 287 Or at 205-07 (quoting Restatement (Second) of Judgments § 24, *comment d*). (Emphasis supplied.) While not necessarily intended, either by the authors of the Restatement (Second) of Judgments or by this court, to be a complete list, the criteria described in *Troutman* do serve as a template against which most cases involving claim preclusion readily can be measured. Applying those criteria to this case, although the issue is a relatively close one, the claims in *Whitaker I* and *Whitaker II* are based on a connected series of transactions and should have been brought in the same proceeding.

A discussion of each of the pertinent criteria from *Troutman* illustrates how the issue should be addressed:

■ ■ 1. *Time.* Time is a significant factor in such an inquiry. Obviously, enough events to give rise to the second claim must have occurred before the first claim is brought so that the party against whom preclusion is asserted *could* have combined his or her later claims with the earlier ones. The more closely connected or overlapping, the stronger the argument that preclusion should apply.

The facts alleged in *Whitaker I* and *Whitaker II* are closely related in time. The breach of contract occurred in late August, 1987, and the alleged conspiracy to force an alteration of the contract occurred within a few weeks thereafter, in early to mid-September, 1987, while Company was still promising to perform and before plaintiffs had commenced *Whitaker I.* No facts alleged in *Whitaker II* took place after plaintiffs filed the complaint in *Whitaker I.*[5] This factor weighs in favor of preclusion.

■ 2. *Space.* Although listed as a separate factor in *Troutman v. Erlandson, supra,* this factor clearly is related to the preceding one, time. When the events allegedly giving rise

---

[5] Plaintiffs contend that the facts in *Whitaker I* and *Whitaker II* are not related in time, because the relevant transaction in *Whitaker I* occurred in May, 1987, when the parties formed the contract. We disagree. Plaintiffs could not have brought *Whitaker I* until defendants breached the contract, which plaintiffs allege did not happen until late August, 1987.

to liability are physically far removed from one another, there may be less reason to apply claim preclusion, but even that separation will lose some of its significance if the events are closely related in time.

The wrongful acts in both *Whitaker I* and *Whitaker II* involved a single parcel of property, occurred in the same town and, to some extent, in the same building. (Plaintiffs allegedly attempted to mitigate their damages due to the breach by securing funds at Bank, and the alleged acts in furtherance of the conspiracy also took place at Bank.) The space factor weighs in favor of preclusion.

3. *Origin.* "Origin" refers to harm, *i.e.*, whatever it was that caused the party against whom preclusion is asserted to complain in the first place. When a party has suffered various kinds of harm to the same kind of interest at the hands of the same defendant, it is reasonable to expect that all theories of recovery for these kinds of harm will be explored in a single proceeding.

The origins of the claims in these cases were related. In *Whitaker I*, the source of the complaint was that defendants had breached their contract to make periodic cash advances to plaintiffs. In *Whitaker II*, the source of the complaint was that defendants had ceased to make payments under the contract, leaving plaintiffs short of cash to cover the expenses that they had accrued in reliance on the contract and that, rather than performing, defendants conspired to avoid the contract by changing its terms. The common origin was the harm caused to plaintiffs' cash flow when the contract payments did not resume. This factor weighs in favor of preclusion.

4. *Motivation.* Motivation may be either objective or subjective, and it can be a pivotal consideration. When a party commits a series of acts, each of which is at least theoretically actionable as an individual case, but the victim of those acts is a single party and the acts all were motivated by a common end, scheme or plan, it is reasonable to treat all the acts as a single occasion for judicial relief. *See Troutman v. Erlandson, supra,* 287 Or at 203-04 (illustrating point).

Here, defendants' motivation in both the actions was, when viewed objectively, essentially the same — to avoid

performance of the contract. Defendants' failure to make the periodic advances and their alleged attempt through a conspiracy with Bank to change the terms of the agreement both manifested a motivation not to perform in accordance with the original agreement. It fairly may be argued, however, that motivation to coerce a new, favorable deal is not the same as motivation to walk away from an old, unfavorable one. On balance, this factor weighs in favor of preclusion.

■  5.  *Convenience.* This factor addresses the ability of the party against whom preclusion is asserted to try the party's various claims in a single proceeding. The more complex and distinct each claim is, factually and legally, the less convenient it is to try all claims together. If, on the other hand, some aspects of one claim would necessarily overlap any complete litigation of another, the argument in favor of requiring that both claims be tried at the same time is strong.

The facts alleged in both complaints formed a manageable trial unit. Witnesses and proof would have overlapped to some degree. In *Whitaker II*, plaintiffs alleged that Bank, in furtherance of the conspiracy with Company, presented them with an agreement that was less beneficial to them than was their original agreement with Company. Plaintiffs attached both the original and the proposed agreements to their complaint. That suggests that plaintiffs intended to demonstrate the fact of the conspiracy, in part, by showing that Bank's proposed agreement was less favorable to plaintiffs than the original agreement. To do that, plaintiffs would have to show what the terms of the original agreement were, thereby making the terms of the original agreement, the subject of *Whitaker I*, a material part of their case in *Whitaker II*. Indeed, many of the factual allegations in the complaint in *Whitaker II* concern the original agreement. Furthermore, evidence that Bank offered plaintiffs a lending agreement and that plaintiffs requested money from Bank would also have been relevant, as to these defendants, in a trial of *Whitaker I* with respect to plaintiffs' attempt to mitigate damages. This factor weighs in favor of preclusion.

■ ■  6.  *Similar Acts.* While the "origin" factor focused on the harm complained of, this factor focuses on the acts that caused the harm. If one harmful act simply has been repeated several times, that suggests preclusion. On the other hand, if

the acts involved were utterly different, such as a physical assault and a forgery, the argument for preclusion is diminished. The question is intertwined closely with the issue of harm; where two very different acts combine to cause a single form of harm, the argument for preclusion is strengthened. Moreover, the fact that succeeding cases involved tort and contract is no reason to bar preclusion, where the complaining party could have been made whole in one proceeding for both kinds of harm done by the other party. *See Troutman v. Erlandson, supra*, 287 Or at 204 (illustrating rule).

Here, the acts about which plaintiffs complain in the two cases were not of the same sort. *Whitaker I* was an action on a contract; the facts alleged in that case do not include the tortious act (conspiracy) alleged in *Whitaker II*. Consequently, *Whitaker II* would involve some different witnesses and evidence than *Whitaker I*. On the other hand, the harm caused by the separate acts — loss of cash flow to plaintiffs at a crucial time, creating severe economic pressures on them to compromise or abandon their contract with defendants — is close to unitary. And, to the extent that they are separable, the harms flowing from the two acts are both economic harm that would have some common elements of proof. On balance, this factor does not weigh significantly for or against preclusion.

Without making any specific reference to the foregoing factors, plaintiffs make a series of generalized arguments to the effect that application of claim preclusion in *Whitaker II* is unjust. We address each of their contentions below.

Plaintiffs argue that the facts in *Whitaker I* and *Whitaker II* would not form a convenient unit for trial, because, first, Bank was a defendant in *Whitaker II*, but not in *Whitaker I*. This argument is chimerical. Joining the claims from *Whitaker II* with those in *Whitaker I*, even assuming that doing so would have made the Bank a necessary party in *Whitaker I*, would not so have changed the nature or extent of the issues to be tried as to turn the case into one that was inconvenient to try as a unit.

Plaintiffs contend alternatively that they did not have time to litigate all claims together because, when they filed *Whitaker I*, they needed to secure funds immediately in

order to pay accrued construction costs and to weatherize the building. Assuming that such a contention bears on the availability to defendants of the doctrine of claim preclusion under factor 5, "convenience" — and we do not decide that question — such record as we have in this case does not support plaintiffs' contention. In the original complaint in *Whitaker I*, plaintiffs requested injunctive and declaratory relief; in their amended complaint in that case, they requested rescission and monetary damages, contending that they were unable to weatherize the property and did not want to complete the exchange. There was no reason, at that point, for them not to join their other claims against defendants.

■ Plaintiffs also contend that the facts alleged in *Whitaker I* and *II* were not a connected series of transactions, because *Whitaker I* concerned a contract action, whereas *Whitaker II* concerned a tort. That distinction, discussed earlier, is significant but not necessarily decisive. The same factual transaction or series of connected transactions can justify relief on different legal theories. *See Troutman v. Erlandson, supra,* 287 Or at 207 ("the fact that different measures of liability or different kinds of relief might have been available, had a different sort of proceeding been instituted, does not keep the doctrine of [claim preclusion] from being applicable").

Plaintiffs ask us to compare this case to the hypothetical transactions contained in *comment d* to section 24 of the Restatement (Second) of Judgments, which illustrate cases in which the drafters, in applying the criteria from that section, would conclude that the facts are or are not connected. Plaintiffs contend that their case is much more like the illustrations where the facts are *not* a connected series than those where the facts are a connected series. The Court of Appeals, for its part, relied heavily on other illustrations from the same comment in which facts *were* deemed to be a connected series. We have examined all the illustrations urged on us by either side. All have analogous elements, but none comes close to being perfectly analogous. We find our own case law to be more helpful.

This court's prior decisions discussing claim preclusion between contract and tort claims are particularly useful. In *Henderson v. Morey,* 241 Or 164, 405 P2d 359 (1965), the

plaintiff brought an action alleging that the defendant had breached a covenant of a land sale contract not to permit waste. The plaintiff had brought an earlier action that alleged that the defendant had defaulted on the same land sale contract and prayed for strict foreclosure. The plaintiff prevailed in the foreclosure action. The court held that the right to recover for waste was an indivisible part of the contract and that the plaintiff should have raised that claim in the foreclosure action. *Id.* at 169.

The court also considered the plaintiff's contention that the second action was for "common law waste and not * * * for breach of the covenant not to permit waste." *Id.* at 171. Although the court rejected that contention, it nonetheless concluded that, even if the second action were for common law waste, it was still barred by claim preclusion. The court reasoned that, because "[t]he relief available under the covenant in the contract is identical with that which could be obtained by bringing a separate common law action for waste," the common law action would be precluded as well as the contract action. *Id.* at 172. In the present case, and while plaintiffs are alleging acts that may be tortious independently of any covenants contained in the contract, the focus of the conspiracy is the defeat of the covenants of the contract, and there are common elements of damages.

In *Stone v. Beneficial Standard Life*, 273 Or 594, 542 P2d 892 (1975), the plaintiff brought an action against the defendant for "tortious breach of contract." The plaintiff asserted that the defendant wilfully and in bad faith breached its contractual obligation to pay to the plaintiff proceeds from a life insurance policy. In a prior action, the plaintiff had recovered the amount of the life insurance proceeds in a claim for breach of contract against the same defendant. Without deciding whether to recognize an action for tortious breach of contract, this court held that the tort claim was barred by claim preclusion. "It is the rule in any case that because part of the claim could have been brought under a separate cause of action, it is no excuse for not applying [claim preclusion] when that portion of the claim could have been readily disposed of in the original proceeding." *Id.* at 599. Although the defendant's act of refusing to pay as obligated under the life insurance policy was allegedly tortious, it also was a

breach of an express provision of the contract. Therefore, when the plaintiff initially chose to sue in contract, she also should have presented the tort claim for damages arising out of the same wrongful acts. Although the alleged wrongful acts in the present case are different than defendants' original acts of default under the contract that led to *Whitaker I*, the two sets of actions had a single object. The connection between the wrongful acts, while not as complete as that between the wrongful acts in *Stone*, was very close.

Finally, and (in our view) most closely analogous, there is *Troutman v. Erlandson, supra.* That case involved allegations of fraud committed during the time the plaintiff and the defendant were partners in a business venture. A previous case had been brought by the same plaintiff for an accounting and for a winding up of the partnership. The fraudulent acts that formed the basis of the second action were known to the plaintiff before the filing of the first action. Had those acts been alleged in the original proceeding, this court held, they could have been taken into account in establishing the defendant's obligations toward the plaintiff in connection with the winding up of the partnership. There was one judicial proceeding that conveniently could have provided the plaintiff with complete relief, had he sought it. Under the circumstances, claim preclusion was appropriate. *Troutman v. Erlandson, supra,* 287 Or at 213.

The same is true in the present case: In a single and convenient proceeding, plaintiffs could have sought relief for all the harm done to them as a result of defendants' persistent refusal to fulfill their contractual obligations. The fact that an additional party, Bank, would be involved does not change the equation. Even if the defendant's alleged fraudulent representations in *Troutman v. Erlandson* had been made with the assistance of a third party, the rationale of that case would have been equally applicable: Only one proceeding was required to afford plaintiff full relief.[6]

---

[6] Indeed, the present case is easier to resolve than was *Troutman v. Erlandson*, 287 Or 187, 598 P2d 1211 (1979), because applying claim preclusion in that case meant that one specie of relief — punitive damages for fraud — would not be available to plaintiff at all, because the court assumed that punitive damages could not have been awarded by the equity court in the proceeding for an accounting. *Id.* at 204. No such difference in available remedy would have existed here; both actions were actions at law.

As the foregoing amply demonstrates, both the criteria for claim preclusion identified by this court in *Troutman v. Erlandson, supra*, and the case law from this jurisdiction call for application of the doctrine of claim preclusion to the facts of this case. The trial court and the Court of Appeals were correct in so holding.

The decision of the Court of Appeals is affirmed.