Argued and submitted August 6, 2007, affirmed August 6, 2008

Aladdin H. HANDAM,
*Plaintiff-Appellant,*

*v.*

WILSONVILLE HOLIDAY PARTNERS, LLC,
an Oregon limited liability company,
dba the Wilsonville Holiday Inn
and Patrick G. Lockhart,
*Defendants-Respondents.*

Washington County Circuit Court
C052825CV; A131788

190 P3d 480

Jeremy L. Fellows argued the cause and filed the briefs for appellant.

Lisa E. Lear argued the cause for respondent Wilsonville Holiday Partners, LLC. With her on the brief were Karen M. Vickers and Bullivant Houser Bailey PC.

Mark Morrell argued the cause and filed the brief for respondent Patrick G. Lockhart.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

Plaintiff appeals from a judgment dismissing his claim against his former employer, Wilsonville Holiday Partners, LLC (Wilsonville), for payment on a default judgment against Lockhart Investments, LLC, which managed a hotel for Wilsonville. The complaint also sought to hold Lockhart Investments's principal, Patrick Lockhart (Lockhart), personally liable for the default judgment against Lockhart Investments. The trial court concluded that plaintiff's complaint failed to state a claim against either party. We affirm.

In determining the sufficiency of a complaint, we accept a plaintiff's well-pleaded allegations as true and give the plaintiff the benefit of all favorable inferences that can reasonably be drawn from the facts alleged. *Simpkins v. Connor*, 210 Or App 224, 226, 150 P3d 417 (2006). The following facts are taken from plaintiff's complaint and its attachments.

In 2004, plaintiff, a former hotel employee, filed suit against Wilsonville (the hotel's owner), Lockhart Investments (the hotel's manager), and his supervisor, alleging several employment-related claims. As relevant here, plaintiff alleged that the defendants unlawfully discriminated against him by increasing his workload, providing instructions in a language that he did not understand, and disciplining him for failing to carry out inconsistent instructions, and that, ultimately, Wilsonville constructively discharged him. Plaintiff obtained a default judgment against Lockhart Investments on the unlawful discrimination claim and, six months later, proceeded to trial against the remaining defendants. Plaintiff obtained a judgment against Wilsonville on his wrongful discharge claim, and Wilsonville prevailed on all other claims.

After the trial, plaintiff attempted to enforce the default judgment against Lockhart Investments but learned that, at the time of the incidents, the company had not been named on the liability insurance policy covering the hotel and would be unable to pay the judgment from its own assets.

Lockhart Investments announced its intention to seek bankruptcy protection if plaintiff sought to execute the judgment. Plaintiff then sought payment from Wilsonville, contending that a management agreement between Lockhart Investments and Wilsonville required Wilsonville to satisfy the judgment against Lockhart Investments. The relevant portions of the management agreement provide:

"1.   [Lockhart Investments] shall act solely on behalf of and as agent for [Wilsonville] and not in [its] own behalf.

"2.   All debts, obligations and other liabilities incurred by [Lockhart Investments] in performance of [its] duties shall be incurred on the behalf of [Wilsonville]. [Lockhart Investments] shall not be liable for payment of debts, obligations, and other liabilities."

Following Wilsonville's refusal to satisfy the judgment against Lockhart Investments, plaintiff brought this action against Lockhart and Wilsonville. Defendants moved to dismiss plaintiff's complaint, contending that plaintiff had failed to state a claim under ORCP 21 A. The trial court granted defendants' motions. As to the claim against Lockhart, the court reasoned that plaintiff had alleged only that Lockhart was reckless in failing to maintain insurance and that that recklessness was not enough to hold Lockhart personally liable for his company's debt. The court dismissed plaintiff's claim against Wilsonville on the ground that it was barred by claim preclusion. Plaintiff's appeal challenges both of those rulings.

■      We begin with plaintiff's claims against Lockhart. A plaintiff seeking to hold a corporation's shareholder personally liable for a corporate debt must allege that the shareholder was in actual control of the corporation and that the plaintiff's inability to collect from the corporation is the result of the shareholder's improper conduct. *Amfac Foods v. Int'l Systems*, 294 Or 94, 108, 654 P2d 1092 (1982). The shareholder's conduct must have been improper either in relation to the plaintiff's entering the transaction in which the debt was incurred or in preventing or "interfering with the corporation's performance or ability to perform its obligations toward the plaintiff." *Id.* at 108-09. Plaintiff asserts that

Lockhart's failure to ensure that his company had the appropriate insurance coverage was "improper conduct." Lockhart responds that the trial court correctly determined that plaintiff's allegations did not constitute "improper conduct" as described in *Amfac Foods*. Lockhart is correct.

■     Although "improper conduct" can include a failure to adequately capitalize a corporation, *id.* at 109, the Supreme Court has explained that the real underpinning of Oregon veil-piercing cases is some form of "moral culpability." *See id.* at 108 (quoting *Schlecht v. Equitable Builders*, 272 Or 92, 97-98, 535 P2d 86 (1975)). The court has since explained that the term "moral culpability" is but one way of describing the type of improper conduct needed to pierce the corporate veil and refers to "dishonest or deceitful conduct intended to harm a third party." *State ex rel Neidig v. Superior National Ins. Co.*, 343 Or 434, 459-63, 173 P3d 123 (2007) (holding that failure to file timely and accurate forms and make required deposits in order to evade governmental regulation was improper conduct). The court has cited as examples the perpetration of a fraud, confusion or commingling of assets, and the evasion of federal or state regulations. *Id.* at 459.

■     Here, plaintiff does not allege that Lockhart Investments was undercapitalized. Instead, plaintiff alleges that Lockhart acted improperly by failing to take a variety of actions—such as insisting that Lockhart Investments be listed as a named insured, inspecting the insurance policy and certificate of insurance, or insisting that the company's omission be corrected—that would have ensured that Lockhart Investments was listed on the hotel's insurance policy, and that Lockhart's "failure to act as alleged" harmed plaintiff. Although plaintiff's allegations might allow an inference that Lockhart followed poor business practices, those allegations do not allow an inference that Lockhart's conduct was "dishonest or deceitful" or intended to harm a third party. For that reason, the alleged conduct was not sufficiently improper to justify piercing the corporate veil to hold Lockhart personally liable for the default judgment against Lockhart Investments. The trial court did not err in dismissing that claim for failure to state a claim.

In his next assignment of error, plaintiff contends that the trial court erroneously dismissed his claim against Wilsonville on the ground of claim preclusion. We review the trial court's determination for errors of law. *Lutterman and Lutterman*, 195 Or App 124, 126, 97 P3d 664 (2004).

■■ Claim preclusion prevents a plaintiff who has prosecuted one action against a defendant through to a final judgment that is binding on the parties from prosecuting another action against the same defendant where the claim in the second action (1) is based on the same factual transaction that was at issue in the first; (2) seeks an additional or alternative remedy to the one sought earlier; and (3) could have been joined in the first action. *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982). The doctrine applies to all claims available against a defendant that arose from a particular factual transaction, regardless of whether the plaintiff actually asserted them. *Id.* at 324.

Plaintiff contends that his claim here is not part of the same factual transaction as his employment-related claims against Wilsonville. Wilsonville disagrees, contending that, although plaintiff's theory of recovery has changed, the same factual transaction is at issue. It reasons that, because plaintiff would have no right to recover were it not for the conduct at issue in the first action, the same underlying facts are at issue in this action. We agree.

■■■ We determine whether a set of factual groupings constitute a single "factual transaction" pragmatically, giving weight to considerations such as time, space, origin, motivation, similarity of acts, and whether the events form a convenient trial unit. *Eli v. Lampert (A116201)*, 194 Or App 280, 285-86, 94 P3d 170 (2004), *rev den*, 338 Or 57 (2005) (citing *Whitaker v. Bank of Newport*, 313 Or 450, 455, 836 P2d 695 (1992)). The time criterion requires the reviewing court to consider whether enough events giving rise to the second claim occurred before the plaintiff brought the first claim so that the plaintiff could have combined the later claims with the earlier ones. *Whitaker*, 313 Or at 456. The second criterion, space, is closely related to time and requires the court to consider the extent to which the events allegedly giving rise to liability are physically removed from each other. The

greater the physical distance between the events, the less reason to apply claim preclusion. *Id.* at 456-57. The third factor, origin, considers the extent to which the various types of harm caused by the defendant affect the plaintiff; the more similar the interests affected, the more likely that the later action is precluded. *Id.* at 457. The fourth criterion, motivation, considers whether the defendant committed a series of acts—all motivated by a common plan or scheme—against the plaintiff. If so, it is reasonable to treat all the acts as a single occasion for judicial relief, even if, in theory, each act is individually actionable. *Id.* at 457-58. Fifth, the court weighs issues of trial convenience, considering the factual and legal complexity of the claims, their factual and legal distinctiveness, and whether the litigation of one claim would necessarily overlap with a complete litigation of another. *Id.* at 458. Considerations of trial convenience are of a particular importance in the analysis. *See Dean v. Exotic Veneers, Inc.*, 271 Or 188, 193, 531 P2d 266 (1975) (quoting Charles E. Clark, *Clark on Code Pleading* § 19, 127 (2d ed 1947) ("The number and extent of operative facts included within a single cause of action are to be determined pragmatically, mainly by considerations of practical trial convenience.")). Finally, the court considers the similarity between the acts that caused harm to the plaintiff. If the acts at issue were very different, the argument for preclusion diminishes—unless those different acts combine to form a single harm. *Whitaker*, 313 Or at 458-59.

We are mindful that those criteria, while helpful, do not provide a mathematically precise answer, but instead serve as a guide in determining whether apparently separate events fit into a common legal framework that should be resolved in a single proceeding. *Jakobitz v. Iron Horse Business Services, LLC*, 208 Or App 515, 527-28, 145 P3d 277 (2006). In light of the interrelatedness of plaintiff's claims, considerations of time, trial convenience, and the unity of harm to plaintiff prompt us to conclude that plaintiff's claim against Wilsonville here is part of the same factual transaction that was the subject of his prior claims.

We begin by noting that the space and motivation criteria weigh against preclusion, but do not significantly affect our analysis. As to space, plaintiff does not allege that the events giving rise to liability in each action—the

employment-related acts in the first case and the conduct alleged here—occurred in the same location. Furthermore, even if those events did occur in the same location, they occurred several years apart. *Cf. Whitaker*, 313 Or at 456-57 (spatial separation loses some of its significance if the events were closely related in time).

Regarding motivation, it does not appear from the complaints that Wilsonville's alleged actions could have been "motivated by a common scheme or plan." *See id.* at 457. Plaintiff's complaint in the first action alleged that Wilsonville's discriminatory actions were the result of racial animus or a desire to punish a potential whistleblower, whereas Wilsonville's alleged refusal to pay Lockhart Investments's debt appears motivated by the belief that it has no obligation to do so.

However, those factors are less significant than those that favor preclusion. First, the time factor is at least neutral, and may in fact favor preclusion. Although the management agreement that forms the basis of plaintiff's current claim predated his first action, the key events giving rise to plaintiff's claim under the agreement did not arise until after he brought his employment-related claims in the prior action. Nevertheless, plaintiff obtained the default judgment against Lockhart Investments—which gave rise to Wilsonville's alleged contractual duty to pay that judgment—six months before the trial of his claims against the other defendants. Wilsonville's liability under the management agreement, if any, had arisen by that time, regardless of when plaintiff sought to collect on that judgment. Indeed, plaintiff could have asserted Wilsonville's potential liability for Lockhart Investments's conduct under the management agreement (that is, that Lockhart Investments was acting as an agent for Wilsonville and "in performance of [Lockhart Investments's] duties") at the time that he first asserted his claims against Lockhart Investments.

With respect to origin, plaintiff contends that, although his first action was based solely on Wilsonville's discriminatory conduct, his current action is based on his inability to execute the judgment against Lockhart Investments. Plaintiff views his current claim too narrowly, however. The source of his complaint in the first action was Wilsonville's

allegedly wrongful conduct that caused him employment-related injuries. The source of his complaint here is that Wilsonville's wrongful conduct prevents him from recovering money damages for essentially the same employment-related injuries. The common harm was money damages that plaintiff sought to recover in both actions for employment-related injuries.

With regard to the similarity of the acts alleged in each action, although Wilsonville's alleged conduct with regard to the management agreement is not similar to the conduct that plaintiff alleged in the first action, those actions combined to cause employment-related harm for which he seeks to recover. Accordingly, that factor favors preclusion. *Cf. Whitaker*, 313 Or at 458-59.

Finally, and most significantly, the convenience factor strongly favors preclusion. Contrary to plaintiff's contention, his claim here is not sufficiently distinct from the employment-related claims. Plaintiff's claim is, at its core, about who will compensate him for employment-related harm done to him by the wrongful conduct of Wilsonville and Lockhart Investments. That issue could have been—and was—adjudicated in the earlier proceeding. The claim plaintiff asserts here is an attempt to shift responsibility for the judgment against Lockhart Investments to Wilsonville. However, that claim could have been conveniently asserted in the first action. Again, to prevail under the terms of the management agreement, plaintiff must establish that Lockhart Investments was acting as an agent for Wilsonville and "in performance of [Lockhart Investments's] duties" when the conduct giving rise to the default judgment occurred. Those facts are similar to the facts necessary to establish an employer's vicarious liability for an employee's conduct. *See Stanfield v. Laccoarce*, 284 Or 651, 654, 588 P2d 1271 (1978) ("Under the doctrine of *respondeat superior*, an employer is liable for the torts of his employee when the employee is acting within the scope of his employment."). Plaintiff could easily have asserted such a theory in his employment-related action.

We conclude that plaintiff's claims should have been resolved in a single proceeding. His claim in this action is

closely related to the facts at issue in the first proceeding—the occurrence of wrongful employment-related conduct and which defendant, if any, should compensate him for that conduct. It follows that the issue of which defendant should compensate him for his injuries—and whether either defendant will be responsible for the other's actions—could also have been decided in the first proceeding. Because plaintiff's claims against Wilsonville are connected, they form a single factual transaction for purposes of claim preclusion.

Plaintiff contends that he could not have joined his current claim as part of his prior action because he was not aware of the possibility of such a claim until he obtained a copy of the management agreement shortly before the trial began; because the pleadings were then closed, any attempt to join his current claim would have required the court's permission, which may not have been forthcoming. We note that plaintiff's assertion about when he learned of the management agreement is outside the record on a motion to dismiss, but reject plaintiff's argument in any event. We addressed a similar contention in *McAmis Industries v. M. Cutter Co.*, 161 Or App 631, 633-34, 984 P2d 909, *rev den*, 329 Or 553 (1999), where the plaintiff had filed actions concerning the same factual transaction in both federal and state court. After the federal court entered judgment, the defendant moved to dismiss the plaintiff's state law claims on claim preclusion grounds. The plaintiff opposed the motion, contending that there was no certainty that the federal court would have exercised supplemental jurisdiction over the state law claims. *Id.* at 641. We rejected that contention, explaining that such a possibility did not excuse the plaintiff's failure to attempt joinder. *Id.* (citing *Rennie*, 294 Or at 327). Likewise here, the possibility that the trial court might have refused to allow plaintiff to join his current claim to his then-existing claims does not excuse plaintiff from the obligation to attempt joinder of the claim. Accordingly, plaintiff's claims against Wilsonville are barred.

Affirmed.