Argued and submitted January 15, reversed and remanded July 15, 1998

William HELTON,
*Respondent,*

*v.*

Dennis W. PHILLIPS,
*Appellant.*

(C970099CV; CA A98270)

963 P2d 100

Robert A. Kerr argued the cause for appellant. With him on the brief were Randall L. Duncan and Duncan • Honn, P.C.

No appearance for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals from an adverse judgment, after cross-motions for summary judgment, in an action arising from a dispute over ownership of Tigard Texaco, Inc. The trial court's disposition rested on two alternative grounds: (1) Defendant was precluded, by the parties' prior arbitration, from asserting an ownership interest in the corporation; and (2) in all events, plaintiff's tender of payment for defendant's shares, pursuant to the parties' agreement, divested defendant of his ownership. We conclude that the trial court erred with respect to both grounds. Accordingly, we reverse and remand.

In April 1990, plaintiff William Helton and defendant Dennis Phillips entered an agreement under which plaintiff retained 51 shares of stock in Tigard Texaco, Inc., and agreed to sell defendant the remaining 49 shares. Defendant agreed to operate and manage the corporation, in exchange for which he was to receive 50 percent of net annual profits. If the terms of the agreement were met through February 1, 1999, plaintiff agreed to transfer to defendant the remaining 51 shares of the corporation in exchange for a cash payment of $30,000. That transfer would terminate plaintiff's interest in the corporation.

The agreement also included a termination clause under which plaintiff and the corporation could terminate defendant as operator and manager if defendant "fail[ed] to properly operate and manage the business." Paragraph 7 of the agreement, which is central to this dispute, provided:

"7. In the event of Phillips' involuntary termination, disability, incapacity, or decision for any reason to voluntary [sic] terminate and discontinue operation and management of the business, Phillips agrees to sell to, and Helton * * * agree[s] to repurchase from Phillips, Phillips' 49 shares of stock for the book value of said shares on the last day of the month immediately preceding the month in which Phillips ceases managing and operating said business, less any payments due from Phillips [under the provision governing defendant's purchase of the 49 shares]."

The parties agreed that, unless waived, any disputes would be subject to binding arbitration under the auspices of the American Arbitration Association (AAA).

Defendant subsequently paid plaintiff the full purchase price for the 49 shares and received a stock certificate. The stock certificate provides that the stock is

"transferable only on the books of this Corporation in person or by Attorney upon surrender of this Certificate properly endorsed, subject to limitations of transfer set forth in the Agreement of 4-2, 1990, between William Helton & Dennis Phillips."

On November 7, 1995, the corporation's board of directors[1] terminated defendant's employment. On November 21, 1995, plaintiff's attorney sent a letter to defendant's attorney that included the following paragraph:

"Since Mr. Phillips has now been involuntarily terminated from the company, my client wishes to terminate all relationships of Mr. Phillips with this business. Therefore, in accordance with paragraph 7. of the contract, I am forwarding herewith a cashier's check in the sum of $14,284.70, along with a copy of the profit and loss statement for the month of October of 1995 of the Tigard Texaco. The sum represented by this check is in full payment to Mr. Phillips for the 49 shares of stock that were issued to him upon the formation of this corporation. Upon acceptance of this check we will expect that Mr. Phillips will return to us his share certificate for 49 shares of stock."

Defendant did not accept the tendered payment. Instead, he returned the $14,284.70 check to plaintiff and retained the certificate for 49 shares of stock.

In December 1995, defendant requested AAA arbitration. The request for arbitration sought, *inter alia*, damages for draws and payments that defendant was allegedly owed under the parties' agreement. Plaintiff responded by claiming that defendant had breached the agreement and had expended corporate funds for personal use and without authorization. Plaintiff asserted that the termination of defendant's employment was lawful. The arbitration, as

---

[1] The directors were plaintiff, his wife, and defendant.

framed by the parties' pleadings, presented issues pertaining only to the termination of defendant's employment and sums owing as a result of that termination. The pleadings presented no issue as to defendant's continuing ownership of an interest in the corporation and, particularly, the effect of defendant's retention of the shares despite plaintiff's tender of payment pursuant to paragraph 7 of the agreement. Most simply, plaintiff did not contend that defendant had wrongly retained the stock certificate or seek to compel defendant to relinquish the shares.

In May 1996, the arbitrator awarded both parties damages on certain claims and counterclaims. None of those dispositions implicated, or depended on, defendant's status as a shareholder. That award was subsequently reduced to a judgment and satisfied.

Although the record is imprecise in this regard, it appears that in the summer of 1996, after the conclusion of the arbitration, Tigard Texaco, Inc., sold substantially all of its assets to some unidentified third party. Defendant allegedly was given no notice of that transaction before it was consummated.

In November 1996, defendant initiated a second AAA arbitration. Although the request for arbitration is not part of this record, defendant apparently asserted that he continued to be a shareholder of Tigard Texaco, Inc.; that the sale without notice violated his rights as a shareholder; and that, if he had been given notice, he would have exercised his dissenter's rights under ORS 60.551 *et seq*.

On January 27, 1997, while defendant's arbitration request was pending, plaintiff filed a "complaint for declaratory relief" in Washington County Circuit Court, alleging that the issue of defendant's stock ownership had been "fully litigated" and "fully determined" in the prior arbitration and, thus, defendant "should be precluded and estopped from proceeding with the second arbitration that he has filed herein." Plaintiff sought:

"1) [A judgment b]arring the defendant from re-arbitrating the contract between the parties, on the basis of claim preclusion.

"2) [J]udgment that the arbitration findings and order that was recorded in the court on May 29, 1996 settled all matters between the parties.

"3) [A]n injunction against the defendant estopping him from proceeding with further arbitration on this matter."

Defendant answered, contending that the issue of stock ownership had not been determined in the prior arbitration. Defendant also counterclaimed, asserting that plaintiff, by his participation in the sale, had breached his fiduciary duty as a director and majority shareholder to defendant; oppressed defendant, a minority shareholder; misappropriated corporate assets; and breached the April 2, 1990, agreement by refusing to participate in the arbitration proceedings initiated by defendant in November 1996. Defendant requested, among other relief, that a constructive trust be placed upon the corporate assets but did not request that the action be abated or that arbitration be compelled.

Thereafter, defendant, with plaintiff's agreement, withdrew his second request for arbitration, and the matter proceeded solely in circuit court. Defendant subsequently moved for summary judgment on his counterclaims, and plaintiff filed a cross-motion for summary judgment on his claims. The trial court granted plaintiff's motion and denied defendant's motion:

"THE COURT:   Well, I guess I'm * * * going back to the basics and there was an agreement which was signed by the parties and * * * it says, 'in the event of the involuntary termination, Phillips agrees to sell to—and Helton to buy.' * * *

"What is the problem? They went according to the agreement and said here's the money for the shares. Now I don't think they have to do anything else at that point. * * * The agreement talks about 'in the event of [termination],' and that occurred. Not in the event of a subsequent arbitration or court finding * * * . It just says in the event of (a) involuntary termination, (b) there is an agreement to buy and sell, send the money and that's it. They sent the money and what was there to do? I don't think there is anything to arbitrate * * *."

On June 5, 1997, judgment was entered as follows:

> "[O]n defendant's Motion for Summary Judgment, defendant Dennis W. Phillips, ceased to be a shareholder in Tigard Texaco, Inc., when he was terminated on November 7, 1995, and a check for the value of his stock was sent to his attorney on November 21, 1995;

> "[W]ith reference to the plaintiff's Motion for Summary Judgment, * * * there has been a previous arbitration hearing between the parties hereto, and the award for the arbitration was duly recorded * * * and became a final judgment. * * * [T]he defendant is therefore precluded and barred from pursuing further litigation against William H[e]lton and/or Tigard Texaco, Inc."[2]

On appeal, defendant assigns error to the trial court's ruling that he was no longer a shareholder of the corporation, which led to the dismissal of his counterclaims. He also assigns error to the trial court's granting of plaintiff's motion for summary judgment. Although defendant raises two assignments of error, he presents a combined argument, which challenges the court's determinations that (1) he was precluded from arbitrating or litigating his alleged shareholder status; and that (2) he had, in all events, been divested of any such status and interest.[3]

■      Defendant asserts, and we agree, that the issue of his shareholder status was not "actually litigated and determined" in the prior arbitration. *See Drews v. EBI Companies,* 310 Or 134, 139-40, 795 P2d 531 (1990) (" 'If a claim is litigated to final judgment, *the decision on a particular issue* or determinative fact is conclusive in a later or different action between the same parties *if the determination was essential to the judgment.'* " (quoting *North Clackamas School Dist. v. White,* 305 Or 48, 53, 750 P2d 485, *modified* 305 Or 468, 752 P2d 1210 (1988)) (emphasis added)). As noted, that issue was

---

[2] Tigard Texaco, Inc., was not a party before the trial court nor in the arbitration proceeding. No issue about the inclusion of Tigard Texaco, Inc., in the judgment is before us.

[3] There is a certain tension, if not incongruity, between the court's two determinations: If defendant was, in fact, precluded by the prior arbitration from "re"-litigating the matter of his alleged shareholder status, then the court's determination of that matter was superfluous.

not presented in the arbitration pleadings; nor was its resolution essential to the resolution of any of the issues that were actually determined. Accordingly, issue preclusion does not apply. *Id.*

■■ Similarly, claim preclusion is inapposite. Claim preclusion bars claims that are based on the same factual transaction as was at issue in the prior litigation when the current claim is one that could have been joined in the first action:

> " '[A] plaintiff who has prosecuted one action against a defendant through to a final judgment * * * is barred [*i.e.,* precluded] * * * from prosecuting another action against the same defendant where the claim in the second action is *one which is based on the same factual transaction* that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is *of such a nature as could have been joined in the first action.*' " *Drews*, 310 Or at 140 (quoting *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982)).

■ Here, defendant's counterclaims are not "based on the same factual transaction that was at issue" in the prior arbitration. The operative "transaction" in the arbitration was the November 7, 1995, termination of defendant's *employment* and, more generally, defendant's conduct as an *employee*. That transaction was factually distinct from plaintiff's subsequent tender of payment for defendant's shares[4] and, even more fundamentally, from the sale of Tigard Texaco's assets, nearly a year later, which triggered defendant's counterclaims for breach of fiduciary duty, oppression of a minority shareholder, appropriation of corporate assets, and breach of contract. Indeed, as a practical matter, defendant, who retained his shares, had no reason to invoke shareholder status until the sell-off of the company's assets. Thus, claim preclusion does not bar defendant's counterclaims.

We further conclude that the court erred in its alternative holding that defendant is, in fact, no longer a shareholder. The court reasoned that, under paragraph 7 of the

---

[4] The only factual relationship between the two events was that, under the parties' agreement, the termination of defendant's employment was a prerequisite to the repurchase of defendant's shares under paragraph 7.

parties' agreement, the combination of the involuntary termination of defendant's employment and plaintiff's tender of payment was sufficient to divest defendant of his ownership interest notwithstanding defendant's rejection of the payment and retention of the stock certificate. Defendant asserts that that reasoning cannot be reconciled with the language of the certificate itself, which states that it is "transferable only * * * upon surrender of this Certificate properly endorsed," and does not comport with principles of corporate law: "[T]here is no legal principle that would allow a person to obtain another person's shares of stock by simply tendering a check."

■　Defendant is correct. Although the parties' agreement contains a buy-sell provision, the agreement does not provide that mere tender of payment, without acceptance, effects a transfer of the shares. Moreover, as noted, the stock certificate itself requires that transfer of the shares occurs only upon surrender of the stock certificate—a requirement that is consistent with the applicable provisions of the Uniform Commercial Code. *See* ORS 78.1040(1); ORS 78.3010.[5]

We emphasize that plaintiff was not without remedies upon defendant's refusal to accept the tendered payment and surrender the shares. Plaintiff could have sought specific performance of defendant's obligations under paragraph 7. But plaintiff failed to do so. So long as the stock certificate

---

[5] ORS 78.1040(1) provides, in relevant part:

"(1) A person acquires a security * * * if:

"(a) The person is a purchaser to whom a security is delivered pursuant to ORS 78.3010[.]"

ORS 78.3010 provides:

"(1) Delivery of a certificated security to a purchaser occurs when:

"(a) The purchaser acquires possession of the security certificate;

"(b) Another person, other than a securities intermediary, either acquires possession of the security certificate on behalf of the purchase or, having previously acquired possession of the certificate, acknowledges that it holds for the purchaser; or

"(c) A securities intermediary acting on behalf of the purchaser acquires possession of the security certificate, only if the certificate is in registered form and has been specially indorsed to the purchaser by an effective indorsement."

*See also* ORS 78.1020(d) (defining "certificated security"); ORS 78.1020(o) (defining "security"); ORS 78.1030 (describing securities).

remained in defendant's possession, defendant was, and is, a shareholder.

Our conclusion concerning defendant's shareholder status is not dispositive. Because the trial court's disposition of the cross-motions for summary judgment rested on its rejection of defendant's shareholder status, the court did not reach and resolve other matters, particularly pertaining to defendant's counterclaims. Accordingly, a remand is required.

Reversed and remanded.