Argued and submitted September 22, 2005, at Pendleton High School, Pendleton, reversed and remanded February 1, 2006

Bradley J. HODGES
and Sharyl Soren-Hodges,
*Appellants,*

*v.*

BLAZER HOMES, INC.,
*Respondent,*

*and*

DRYVIT SYSTEMS, INC.,
a Rhode Island corporation;
George Skorpil,
an individual,
dba G & S Construction
and dba Alpine Plastering;
and Haltiner Sheet Metal, Inc.,
an Oregon corporation,
*Defendants.*

BLAZER HOMES, INC.,
*Third-Party Plaintiff,*

*v.*

ANDERSON ROOFING CO., INC.,
an Oregon corporation;
Dryvit Systems, Inc.,
a Rhode Island corporation;
G & S Construction,
dba Alpine Plastering,
an Oregon corporation;
Haltiner Sheet Metal, Inc.,
an Oregon corporation;
Mark Hamm,
an individual;
Manufacturing, Inc.,
an Oregon corporation;
and Rich Walton & Associates,
an Oregon corporation,
*Third-Party Defendants.*

CCV 00-11-272; A116294

129 P3d 196

Lindsey H. Hughes argued the cause for appellants. With her on the briefs was Keating Jones Bildstein & Hughes PC.

Lisa E. Lear argued the cause for respondent. With her on the brief were Peter J. Viteznik and Bullivant Houser Bailey PC.

Before Edmonds, Presiding Judge, and Schuman, Judge, and Wallace, Judge pro tempore.

SCHUMAN, J.

## SCHUMAN, J.

In this negligence action, the trial court granted summary judgment to defendant Blazer Homes, Inc. (Blazer),[1] concluding that plaintiffs' action seeking damages for Blazer's allegedly substandard construction of their home was barred by claim preclusion because plaintiffs had already brought an earlier action against Blazer for breach of contract stemming from the same construction project. Plaintiffs contend that claim preclusion cannot operate as a bar to the present action because it is based on alleged defects that, at the time of the first action, they neither knew of nor could reasonably have discovered. Because we conclude that there is a factual dispute on that issue, we agree with plaintiffs that the court erred in granting summary judgment.

Blazer contracted to build a home for plaintiffs. The project was completed in 1992, although plaintiffs did not believe that Blazer had fully or competently performed on the contract. In 1994, Blazer sued plaintiffs for $8,488.07 allegedly still due under the contract. Plaintiffs filed a counterclaim alleging breach of contract, breach of warranty, misrepresentation, and violations of Oregon's Unlawful Trade Practices Act, ORS 646.605 to 646.638. The case went before an arbitrator. The arbitration agreement recorded plaintiffs' assertions that Blazer

"(1)   failed to complete the home as promised;

"(2)   manipulated the accounting and documentation of costs in an attempt to charge [plaintiffs] more than they agreed to pay for the home;

"(3)   refused to correct its defective work or to undertake warranty work;

"(4)   attempted to charge [plaintiffs] for correcting [Blazer's] defective work;

---

[1] The ORCP 67 B judgment did not resolve plaintiffs' claims against Dryvit Systems, Inc., George Skorpil, and Haltiner Sheet Metal, other defendants in this matter; those claims are not before the court in this appeal, nor is Blazer's claim as a third-party plaintiff for contribution and indemnity against several third-party defendants.

"(5)   attempted to charge [plaintiffs] for goods and services not incorporated into their home;

"(6)   failed to supply an adequate heating system for their home; and

"(7)   failed to adequately supervise the construction of their home resulting in deviations from the plans and specifications."

Several of these general assertions contained more detailed specifications of what, according to plaintiffs, defendant had failed adequately to accomplish, including flaws in the roof, windows, and siding. After a hearing, the arbitrator awarded plaintiffs $11,650.03 plus half of the costs of arbitration, designated plaintiffs as the prevailing parties, and awarded them attorney fees. The award was filed in Washington County Circuit Court.

In 2000, plaintiffs filed the present negligence action against Blazer and others to redress damage that plaintiffs allege they did not discover until that year. That damage, plaintiffs contend, resulted from water intrusion, previously unknown construction defects, and use of improper construction materials. Plaintiffs further assert that once that damage became manifest, plaintiffs discovered "additional hidden damage, including water damage and hidden sheathing and framing damage[.]" The complaint alleges that defendants performed their work negligently in the following particulars:

"The water leakage and damage is the result of the following non-exhaustive list of items of faulty workmanship and construction, and improper defective materials:

"(a)   Roof flashings[2] were not properly installed or sealed to protect the home from wet weather;

"(b)   Roof scuppers[3] were not properly installed or sealed to protect the home from wet weather;

"(c)   Windows and doors were not properly installed or sealed to protect the home from wet weather;

---

[2] Flashings are metal strips used to form watertight joints between intersecting roof surfaces and between roof and wall surfaces.

[3] Scuppers are openings that allow water to drain off a flat roof.

"(d)   Penetrations through the synthetic stucco on the exterior of the home (known as exterior insulated finish system or 'EIFS') were not properly sealed to protect the home from wet weather;

"(e)   The foam board for the EIFS was not properly installed on the exterior walls of the home;

"(f)   The EIFS on the exterior walls of the home was not installed with proper slopes for drainage;

"(g)   The EIFS on the exterior walls of the home was improperly terminated below ground level;

"(h)   The EIFS on the exterior walls of the home has cracked and failed;

"(i)   The EIFS was not installed on the exterior walls of the home in accordance with published manufacturer's recommendation and industry standards;

"(j)   The building was not weatherproofed according to the building code."

The complaint further alleges that defendants negligently failed to warn plaintiffs about certain EIFS maintenance requirements and that defendants' failure to comply with building codes constituted negligence *per se*. Plaintiffs averred, in the form of an ORCP 47 E[4] affidavit, that an expert would testify that the newly discovered defects could not reasonably have been discovered at the time of the 1994 action.

Blazer raised claim preclusion as an affirmative defense and moved for summary judgment on that basis. After hearing arguments, the trial court granted Blazer's motion for summary judgment and explained its decision as follows:

---

[4] ORCP 47 E applies where a party seeks to establish a genuine issue of material fact through use of expert testimony. It states, in pertinent part:

"If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit or a declaration of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion."

"[THE COURT]: Well, counsel, I don't know who represented these folks on their first go around. But any time you allege that there is a defect in the roof and a defect, there's leaks and defects in caulking and all those things, and you grow up in Oregon, you certainly have got to know that those kind of defects are going to cause some damage within the walls of the structure. I guess it's just common sense.

"I think these claims should have been raised in the original proceeding. And for that reason, based upon the law that has been presented in the briefs, I am going to grant the motion for summary judgment."

Plaintiffs assign error to that ruling.

■■ The doctrine of claim preclusion may be invoked to prevent a party from bringing a second claim after a final judgment in a prior action if the prior judgment is binding on both parties, the claim in the second action is based on the same factual transaction or series of connected transactions that was at issue in the first claim, the second claim seeks a remedy additional or alternative to the one sought in the first claim, and the second claim could have been brought along with the first claim. *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982); *Troutman v. Erlandson*, 287 Or 187, 202, 598 P2d 1211 (1979). Claim preclusion is designed to protect parties from "harassment * * * by successive legal proceedings" and to conserve judicial resources. *Dean v. Exotic Veneers, Inc.*, 271 Or 188, 192, 531 P2d 266 (1975).

The decisive issue in the present case is whether, for the purpose of claim preclusion analysis, a second claim "could have been brought" in the first action when the second action is based on facts that the plaintiff did not know and could not reasonably have known at the time of the first action. No Oregon cases or statutes directly decide that issue. However, at least two leading Oregon cases strongly suggest that a second claim cannot be precluded on the basis of facts unknown at the time of the first claim.

Two of the most thorough discussions of claim preclusion in Oregon case law occur in *Troutman* and in *Whitaker v. Bank of Newport*, 313 Or 450, 836 P2d 695 (1992). In both cases, the court reached conclusions that flow

from the presumption that a second claim cannot be barred when it is based on facts that were in existence at the time of the prior claim but were unknown and not reasonably discoverable by the plaintiff at that time, even if both claims stem from the same transaction. In *Troutman*, the plaintiff had initially brought a partnership dissolution action alleging that his partner had fraudulently induced him into entering the partnership and fraudulently disposed of partnership property. 287 Or at 189-90. After judgment was entered, the plaintiff sued his partner for fraud, alleging losses due to conduct that, the court determined, was known or reasonably discoverable at the time of the dissolution action. *Id.* at 210-13. The court held the second action barred by claim preclusion, explaining: "The *only reason* for permitting plaintiff to maintain this second case would be his *asserted lack of actual and constructive knowledge of the fraud in time to give evidence of it at the trial of the first case.*" *Id.* at 210 (emphasis added). According to the court's reasoning, if the plaintiff lacked knowledge of fraud at the time of the first claim, his second claim would not have been precluded, despite the fact that the claims otherwise stemmed from the same factual transaction.

In *Whitaker*, the plaintiffs were builders who executed a contract with a developer calling for the plaintiffs to construct buildings on the developer's property in return for which the developer would make periodic payments. 313 Or at 452. After the developer stopped making payments, the plaintiffs negotiated with a bank to finance the remainder of the project. The plaintiffs alleged that, after they struck an initial deal with the bank, the bank attempted to force the plaintiffs to accept a different arrangement, which would have benefitted the developer and the bank at the plaintiffs' expense. *Id.* The plaintiffs sued the bank and the developer for declaratory and injunctive relief, seeking to clarify and enforce the contract between the plaintiffs and the bank. The parties settled the case. *Id.* at 453. After several months, the plaintiffs again sued, alleging that the bank and the developer conspired to alter the terms of the plaintiffs' obligations to the developer. *Id.* The court determined that the trial court properly dismissed the plaintiffs' second set of claims on the basis of claim preclusion. *Id.* at 463.

The *Whitaker* court emphasized the point that, in *Troutman*, the plaintiff's knowledge of the availability of a later claim at the time of the first was strongly determinative. Because the *Troutman* plaintiff had that knowledge, nothing excused him from not having brought both claims at once:

"[Troutman's second claim] involved allegations of fraud committed during the time the plaintiff and the defendant were partners in a business venture. A previous case had been brought by the same plaintiff for an accounting and for a winding up of the partnership. *The fraudulent acts that formed the basis of the second action were known to the plaintiff before the filing of the first action.* Had those acts been alleged in the original proceeding, this court held, they could have been taken into account in establishing the defendant's obligations toward the plaintiff in connection with the winding up of the partnership. There was one judicial proceeding that conveniently could have provided the plaintiff with complete relief, had he sought it. * * *

"The same is true in the present case: In a single and convenient proceeding, plaintiffs could have sought relief for all the harm done to them as a result of defendants' persistent refusal to fulfill their contractual obligations."

*Whitaker*, 313 Or at 462 (emphasis added). The *Whitaker* court analogized the *Troutman* facts to the case before it and reasoned that the *Whitaker* plaintiffs, too, had full knowledge of the conspiracy claim at the time of the contract-based action. With that knowledge, the plaintiffs were unable to contend that the second action *could not* have been brought at the time of the first; rather, "[o]nly one proceeding was required to afford plaintiff[s] full relief." *Id.*

■        Based on our understanding of *Whitaker* and *Troutman* (among other considerations described below), we hold that claim preclusion cannot apply if the party asserting a second claim lacked actual or constructive knowledge of its availability when the party asserted the first claim. In that situation, the party cannot be said to have had the "opportunity to litigate" the first claim. *See Drews v. EBI Companies*, 310 Or 134, 140, 795 P2d 531 (1990) (For claim preclusion to operate, "[t]he opportunity to litigate is required, whether or not it is used."). Put another way, the second claim could not

have been brought with the first claim if the plaintiff did not have actual or constructive knowledge, when the first claim was tried, that the second claim existed and could be joined.

■■ Whether the court will impute constructive knowledge to the party depends on whether the party could have discovered the availability of the second claim by conducting a reasonably diligent inquiry at the time of the first. *See Forest Grove Brick v. Strickland*, 277 Or 81, 86, 559 P2d 502 (1977) (constructive knowledge imputed in circumstances where there is a duty of undertaking "a reasonably diligent inquiry" that would have provided actual knowledge); *Oregon Occupational Safety v. Port of Portland*, 141 Or App 467, 473, 918 P2d 448 (1996) (Constructive knowledge "refer[s] to the extent to which information merely gives one reason to have known a fact, whether or not actual knowledge occurs.") (citing *Black's Law Dictionary* 784 (5th ed 1979)). Where the second claim is for negligence, that claim is "reasonably discoverable" at the time of the first claim if the plaintiff, in the exercise of care, should have discovered the injury that he or she seeks to redress. *See Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994).

This constructive knowledge requirement comports with similar standards in other jurisdictions. *See, e.g., Du-Al Mfg. Co., a Div. of SOS Consol., Inc. v. Sioux Fall Const. Co.*, 487 NW2d 29, 32 (SD 1992) ("[W]here it appears that the plaintiff had no knowledge or means of knowledge of the omitted items in his first suit, his ignorance will excuse him and the judgment in the first action will not bar a subsequent action to recover on the omitted items."); *Bolte v. Aits, Inc.*, 60 Haw 58, 62, 587 P2d 810, 813-14 (1978) ("We adhere to the rule adopted by the majority of jurisdictions that have dealt with the problem that a former recovery will not bar claims of which the plaintiff was ignorant, even if those claims existed at the time suit was commenced in the former recovery and could have been joined[.]"); *see also Judgments*, 46 Am Jur 2d 841 § 567 (1994) ("Where, after the rendition of a judgment, subsequent events occur, creating a new legal situation * * * the judgment may thereby be precluded from operating as an estoppel.").

Finally, our holding does not inflict undue damage to the policy objectives underlying the claim preclusion doctrine. In *Troutman*, the court adopted a *Restatement* passage to explain the relationship between the "same transaction" test, one prong of the claim preclusion doctrine, and the reason for the doctrine itself:

> "The expression 'transaction, or series of connected transactions,' * * * invokes a pragmatic standard to be applied with attention to the facts of the cases. And underlying the standard is the need to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim."

287 Or at 206 (quoting *Restatement (Second) of the Law of Judgments* § 61 comment b). Barring a claim that was not reasonably knowable during the earlier litigation would defeat the plaintiff's legitimate interest in vindicating the claim. Nor is judicial economy served by requiring a plaintiff to include in every complaint a complete catalogue of potential claims—known, unknown, and purely speculative—or, as plaintiffs allege is the case here, to conduct extensive and costly destructive investigation. Moreover, as the Supreme Court of Hawaii has explained in a factually similar case, the constructive knowledge requirement in no way frustrates another purpose of the doctrine, the limitation of "vexatious" litigation:

> "The rule against [claim] splitting should not be so rigidly applied, however, to produce an injustice and thwart the policy upon which it was founded. Thus, where the plaintiff is ignorant of a possible cause of action which existed at the time of commencement of a prior, related action, and he is not negligent in his ignorance or his ignorance was caused by the fraud or fault of the defendant, plaintiff's purpose in bringing the subsequent action will not be to consciously and unreasonably vex or harass the defendant. Rather, plaintiff's purpose will merely be to enforce the alleged liability upon the defendant. Consequently, the rationale and rule against splitting a cause of action will be inapplicable."

*Bolte*, 60 Haw at 62-63, 587 P2d at 814. The same reasoning applies in this case.[5]

■     Blazer prevailed on its motion for summary judgment. We can affirm that judgment only if we determine that the record, viewed in the light most favorable to plaintiffs, presents no disputed issues of material fact and we determine that, on the undisputed facts, Blazer is entitled to a judgment as a matter of law. ORCP 47 C. As noted above, the record contains an affidavit from plaintiffs attesting that they did not know of the damage alleged in their 2000 complaint at the time they filed their first claim in 1994, as well as an affidavit stating that their expert witness would testify that the newly discovered damages were not discoverable in 1994 without having conducted extensive destructive testing. Those affidavits create an issue of material fact as to whether plaintiffs, in 1994, had either actual or constructive knowledge of the defects that form the basis of their 2000 claim. *See Gaston*, 318 Or at 256 ("Whether a reasonable person of ordinary prudence would be aware of a substantial possibility of tortious conduct is a question of fact* * *."). In granting Blazer's motion for summary judgment, the trial court stated:

> "[A]ny time you allege that there is a defect in the roof and a defect, there's leaks and defects in caulking and all those things, and you grow up in Oregon, you certainly have got to know that those kind of defects are going to cause some damage within the walls of the structure. I guess it's just common sense."

We understand this statement to be the trial court's finding that, in 1994, plaintiffs (who presumably grew up in Oregon) either knew or should have known of the defects that they did not allege until 2000. However, the record reveals a dispute over that fact. Instead of attempting to resolve it, the trial

---

[5] Our conclusion should not be taken to displace or alter the well-settled rule that the occurrence of additional damages alone is not a basis for disregarding the rules of preclusion. *E.g., Wilson v. Western Alliance Corp.*, 78 Or App 197, 201, 715 P2d 1344, *rev den*, 301 Or 446 (1986). Our holding permits a second claim only when the additional damages asserted therein stem from facts that were unknown and not reasonably discoverable at the time of the first claim.

court should have denied the motion for summary judgment. We therefore reverse the judgment and remand for trial.

Reversed and remanded.