Argued and submitted May 11, affirmed October 11, 2006

Robert JAKOBITZ
and Gloria Jakobitz,
*Respondents,*

*v.*

IRON HORSE BUSINESS SERVICES, LLC,
an Oregon limited liability company;
Sharon Patterson,
an individual;
Timberline Telco, Ltd.,
an Oregon corporation;
ECI Communications, Inc.,
an Oregon corporation;
Perkins Posterity Trust,
a purported trust;
John and Jane Does 1-10;
Mt. St. Helens,
a purported trust;
and S. O. Trust,
a purported trust,
*Defendants,*

*and*

OAK DEN VENTURES,
a purported trust,
and Richard and Joyce Ogden Family Trust,
a purported trust,
*Appellants.*

16-01-16960; A121183

145 P3d 277

Clayton C. Patrick argued the cause and filed the briefs for appellants.

Lance Brooks argued the cause for respondents. On the brief were Bruce Cully Moore, Sam Houston, and Moore & Associates.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendants Oak Den Ventures (Oak Den) and Richard and Joyce Ogden Family Trust (Family Trust) appeal from a judgment for plaintiffs in this action to set aside alleged fraudulent transfers and for related relief. Defendants assert that judgments in previous cases precluded plaintiffs from bringing their claims in this case. We review the trial court's contrary determination for errors of law. *Lutterman and Lutterman*, 195 Or App 124, 126, 97 P3d 664 (2004). We affirm.

The pertinent facts are undisputed. In 1991, plaintiffs founded ECI Communications, Inc. (ECI), a long-distance telecommunications company based in Roseburg. In April 1999, they sold ECI to Oak Den, a trust that Richard and Joyce Ogden had created. The terms of the sale required Oak Den to make monthly payments to plaintiffs, to assume ECI's debt to plaintiffs, and to assume liability for ECI's debt to Wells Fargo Bank, a debt that plaintiffs had guaranteed. Oak Den stopped making the monthly payments to plaintiffs in November 1999, and it failed to make the payments to Wells Fargo.

Oak Den's failures led to three separate legal actions before this one. In the first (the ECI case), which plaintiffs brought in January 2000, they sued ECI for breach of contract. In the second (the Oak Den case), which plaintiffs brought in February 2000, they sued Oak Den, the Ogdens, and a number of unidentified John Doe defendants for breach of contract, fraud in the inducement of the contract, and to declare the Ogdens liable for Oak Den's actions by piercing the veil of the trust. In the third (the Wells Fargo case), which Wells Fargo Bank brought in July 2000, the bank sued plaintiffs on their guarantee of ECI's debts. Plaintiffs brought third-party claims in the Wells Fargo case, against the same defendants, and on the same theories, as in the Oak Den case.

In the ECI case, plaintiffs obtained a default judgment against ECI for $330,000. The trial court consolidated the Oak Den and Wells Fargo cases (the consolidated cases), and Wells Fargo received a judgment against plaintiffs on its

claim. Thereafter, in July 2001, plaintiffs settled their claims in the consolidated cases against Oak Den and the other defendants. Under the settlement, plaintiffs received a judgment on their breach of contract claim against Oak Den for $766,834.97. The judgment dismissed with prejudice their other claims, including the claims against various John Doe defendants. As part of the settlement, the parties expressly agreed that the John Doe defendants included a number of trusts and other entities that were associated with the Ogdens; they listed those entities in the settlement agreement. The parties also agreed that the judgment against ECI remained in effect, "together with all rights associated therewith."

In May 2001, during the discovery process in the consolidated cases, plaintiffs discovered evidence that the Ogdens had systematically stripped ECI and Oak Den of their assets and transferred them to other entities that the Ogdens or their family controlled. Those other entities were among the John Doe defendants in the consolidated cases. Plaintiffs did not attempt to bring any claims related to those transfers in the consolidated cases. Instead, after the entry of judgment pursuant to the settlement, they filed this action, in which they asserted two claims, each of which is based on alleged fraudulent transfers of assets.

In their first claim, plaintiffs alleged that ECI and Oak Den engaged in a conspiracy to defraud plaintiffs and to hinder and delay the collection of ECI's and Oak Den's indebtedness to plaintiffs. Plaintiffs alleged that ECI and Oak Den did so by transferring their assets to the other entities and that those other entities were aware of ECI's and Oak Den's intent. According to plaintiffs, the objects of the alleged conspiracy were to avoid paying ECI's and Oak Den's obligations to plaintiffs, to avoid paying other ECI obligations that plaintiffs guaranteed and as to which Oak Den was required to indemnify plaintiffs, to steal the assets and revenue of ECI, and to acquire ECI's corporate opportunities at a grossly inadequate cost. Plaintiffs sought damages equal to the combined amount of their judgments against ECI and Oak Den. In their second claim, plaintiffs alleged that the transfers were fraudulent and sought to set them aside.

Defendants filed a motion for summary judgment against plaintiffs' original complaint on the ground that the judgments in the previous cases precluded both of plaintiffs' claims. The trial court concluded that the second claim, to set aside the alleged fraudulent transfers, was not precluded. It also concluded that the first claim, for damages for conspiracy, was precluded, and therefore granted the motion for summary judgment on that claim. However, the court recognized that the original transferees might have disposed of the property to bona fide purchasers, thereby impairing plaintiffs' ability to set aside the conveyances. It therefore permitted plaintiffs to conduct further discovery and to refile the first claim if they found evidence that "[d]efendants impaired the value of the property through a fraudulent conveyance."[1]

Plaintiffs subsequently filed amended and second amended complaints (the amended complaints) that included both claims and that differed from their original complaint only in adding new defendants. Defendants opposed the filing of both amended complaints and moved to strike the first claim in the second amended complaint on the ground that the trial court had previously granted defendants' motion for summary judgment against that claim. They argued that, under the trial court's previous ruling, plaintiffs could assert a claim for conspiracy only if it were limited to events that occurred after the settlement of the consolidated cases in July 2001. The trial court denied the motion to strike.

In January 2003, the parties tried their claims and counterclaims to the court.[2] In its letter opinion explaining its decision, the court initially concluded that plaintiffs' first claim was not a common-law claim for conspiracy but was, rather, a claim under ORS 95.270 for damages arising from a fraudulent conveyance. It did not explain the basis for that conclusion. The court then found in favor of plaintiffs on both of their claims. Before judgment, plaintiffs resolved their claims against defendants other than Oak Den and Family Trust by settlements and defaults and by dismissing their

---

[1] The court used "defendants" to refer to all of the defendants in the case, not only those that are involved in the present appeal.

[2] The trial court found against defendants on their counterclaims, and they are not at issue on appeal. We therefore do not discuss them further.

claims against one defendant. The court entered judgment in plaintiffs' favor against the remaining defendants and against ECI for $1.1 million, which was the approximate combined amount of plaintiffs' judgments against ECI and Oak Den. The court also voided all transfers of ECI assets to Oak Den, to Family Trust, or to any of the settling or defaulted defendants. The money judgment was based on plaintiffs' first claim, and the judgment voiding the transfers was based on the second claim.

In their first and fourth assignments of error, defendants argue that the trial court erred in failing to grant their motion for summary judgment, which they renewed at the close of the evidence, in its entirety.[3] They argue that plaintiffs' claims in this case are the same as their claims in the earlier cases, or at least arose from the same factual setting, and that plaintiff knew about those claims when they settled the earlier cases. Defendants point out that the alleged fraudulent transfers occurred before the earlier settlements and that plaintiffs learned about those transfers more than two months before the settlements. They interpret the trial court's ruling on their motion for summary judgment as allowing plaintiffs to replead only if they discovered transfers that occurred after the settlements or that defendants had concealed at the time of the settlements. According to defendants, plaintiffs' action of filing amended complaints whose allegations were identical to those of the original complaint demonstrates that neither of those events occurred. The difficulty with defendants' argument is that, under the trial court's ultimate construction of plaintiffs' allegations, defendants were not entitled to summary judgment on either of plaintiffs' claims.

---

[3] In *Stromme v. Nasburg and Co.*, 80 Or App 26, 29, 721 P2d 847, *rev den*, 302 Or 35 (1986), we held that the denial of a motion for summary judgment based on claim preclusion is not reviewable because it necessarily requires an evidentiary showing. More recently we have recognized that the denial of such a motion can involve only the legal effect of undisputed facts and that, in such a situation, the denial is reviewable. *Lutterman*, 195 Or App at 129-30; *see also Najjar v. Safeway, Inc.*, 203 Or App 486, 495, 125 P3d 807 (2005), and *Stevens v. Horton*, 161 Or App 454, 460-61, 984 P2d 868 (1999), *rev den*, 331 Or 692 (2001) (applying same rule when motion is based on issue preclusion). That is the situation in this case, and we therefore do not need to consider the effect of the renewal of the motion at the close of the evidence on the reviewability of the issue.

As the trial court construed plaintiffs' second amended complaint at the time of trial, both of their claims arose solely under the Uniform Fraudulent Transfer Act, ORS 95.200 to 95.310. ORS 95.240(1) provides that a transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer "if the debtor made the transfer * * * without receiving a reasonably equivalent value in exchange for the transfer * * * and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer * * *." ORS 95.260 and ORS 95.270 provide the remedies for a creditor when a debtor makes a transfer that the act declares to be fraudulent. ORS 95.260 allows a creditor, among other things, to avoid a fraudulent transfer of an asset "to the extent necessary to satisfy the creditor's claim." ORS 95.260(1)(a). A creditor that has obtained a judgment may also levy execution on the asset transferred or its proceeds. ORS 95.260(2). As an additional remedy, ORS 95.270 permits the creditor to recover a judgment against the first and any subsequent transferee of the asset for the value of the asset at the time of the transfer, up to the amount of the creditor's claim against the transferor.[4] The statute, thus, permits a creditor to collect a debt when the debtor has tried to strip itself of assets that the creditor could have applied for that purpose. The legal basis for the debtor's obligation is irrelevant to a creditor's rights under the statute.

In their first claim, plaintiffs asserted a common-law claim for damages for civil conspiracy to defraud. The trial court granted defendants' motion for summary judgment against that claim. Plaintiffs' attorney argued, however, that what plaintiffs really sought was to satisfy their money judgments from assets in the hands of transferees. With that understanding, the trial court, when it ruled on the summary judgment motion, authorized plaintiffs to refile the first claim if discovery showed that the original transferees had impaired the assets by transferring them to subsequent transferees. It thereby permitted plaintiffs to treat the first claim as a claim under ORS 95.270. Contrary to defendants' understanding, the trial court did not distinguish between

---

[4] A creditor may not recover against a subsequent transferee who took in good faith and for value. ORS 95.270(3).

transfers made before the settlement of the consolidated cases and transfers made thereafter; what mattered was whether a subsequent transfer had impaired the value of the asset. That is how plaintiffs treated the trial court's ruling, and it is how the trial court itself treated the ruling in deciding defendants' motions against the amended complaints. Finally, it is how the trial court treated the first claim when, in its letter opinion after trial, it concluded that that claim arose under ORS 95.270, a conclusion that defendants do not challenge.

In their second claim, plaintiffs sought to avoid the alleged fraudulent transfers under ORS 95.260 and to make the assets directly available to pay their judgments. The trial court denied defendants' motion for summary judgment on the second claim on the ground that, as a claim for a fraudulent conveyance, it was separate from the claims for breaches of contract that had been the basis for plaintiffs' claims in the consolidated cases. The issue on appeal on both claims is whether plaintiffs' claims for fraudulent conveyances in this action are part of the same claim as their claims for breach of contract and, thus, are precluded by the judgment in the consolidated cases.[5]

■   The Supreme Court has summarized the common law of claim preclusion:

"[A] plaintiff who has prosecuted one action against a defendant through to a final judgment binding on the parties is barred on *res judicata* [claim preclusion] grounds from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action."

*Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982). The "same factual transaction" that *Rennie* describes

---

[5] In the text, we discuss the common law of claim preclusion. ORS 43.130(2) also provides for statutory claim preclusion when the plaintiff seeks "the same thing" in the second case as in the first. In the consolidated cases, plaintiffs sought damages for breaches of contract. In this case, they seek to set aside fraudulent transfers or to recover damages arising from those transfers. Those are not the same things, and the statute therefore did not preclude this action.

is not limited to the identical events. Rather, it may be a connected series of transactions, so that a judgment based on one set of events in the series may preclude an action based on another set of events in the same series. *Whitaker v. Bank of Newport*, 313 Or 450, 836 P2d 695 (1992). An important question for claim preclusion purposes is determining when a number of transactions constitute a connected series and when they do not. *Whitaker* is the leading case on that issue.

The plaintiffs in *Whitaker* agreed with Thiel Creek Development Company to construct buildings on property that the plaintiffs had received in an exchange with Thiel Creek. Under the agreement, Thiel Creek was to make periodic payments to cover the costs of construction. When Thiel Creek stopped making the required payments, the plaintiffs' bank refused to provide financing, except on terms that were extremely favorable to Thiel Creek, and it attempted to force the plaintiffs to accept those terms. The plaintiffs refused to do so and, instead, filed an action against Thiel Creek and Diers, one of its officers, to enforce the contract. Shortly before trial, Thiel Creek agreed to pay what the plaintiffs demanded; the court dismissed the case with prejudice after they did so. 313 Or at 452-53.

After the dismissal of the case against Thiel Creek and Diers, the plaintiffs filed a new action in which they sued the bank on several claims related to its conduct. In their third claim, they included Thiel Creek and Diers as defendants along with the bank, alleging that all three defendants had engaged in a conspiracy to vary the terms of the agreement. They sought damages for alleged emotional distress and punitive damages. The trial court granted summary judgment to Thiel Creek and Diers on the ground of claim preclusion, and the Supreme Court affirmed. *Id.* at 453-54.[6]

The court first noted that the plaintiffs did not dispute that they sought a remedy that was additional to the one that they had obtained in the first action or that they could have joined all of their claims against Thiel Creek and

---

[6] The claim at issue on appeal was the portion of the plaintiffs' third claim that involved Thiel Creek and Diers, not any of their claims against the bank. *Whitaker*, 313 Or at 453 n 2.

Diers in that action. Thus, the only issue was whether the claim in the second action was based on the same factual transaction as the claim in the first. In that regard, the court held that the " 'same factual transaction' can be either a single transaction or a connected series of transactions." *Id.* at 455 (quoting *Rennie*, 294 Or at 329). The two transactions in *Whitaker* were the breach of the contract and the conspiracy to engineer a subsequent agreement to alter the original contract; the issue was whether those separate transactions were part of a connected series. In resolving that issue, the court relied on criteria that it had previously adopted from the *Restatement (Second) of Judgments* section 24 (1982). The question, it said, was to be determined pragmatically, considering criteria that included whether the facts are related in time, space, origin, and motivation, and whether treating them as a unit conforms to the parties' expectations or to business understanding or usage. The court stated:

> " 'When a defendant is accused of * * * *acts* which though occurring over a period of time were *substantially of the same sort and similarly motivated,* fairness to the defendant as well as the public convenience may require that they be dealt with in the same action. The events constitute but one transaction or a connected series.' "

*Whitaker,* 313 Or at 455-56 (quoting *Troutman v. Erlandson,* 287 Or 187, 205-07, 598 P2d 1211 (1979)) (emphasis *Whitaker* court's). Although *Whitaker* was a close case, the court concluded that the plaintiffs should have brought all of their claims in the same action. 313 Or at 456.

The first criterion that the court discussed was time. Enough events must occur before the plaintiff brings the first case so that it could combine the later claims with the earlier ones.[7] In *Whitaker,* the breach of contract occurred in late

---

[7] It is not entirely clear whether the crucial date under the time criterion is the date of filing the first action or the date of trial. In *Whitaker,* the Supreme Court referred to the date "the first claim is brought," 313 Or at 456, and otherwise appeared to rely on the date of filing. We followed that precedent in *McAmis Industries v. M. Cutter Co.,* 161 Or App 631, 638, 984 P2d 909, *rev den,* 329 Or 553 (1999). However, in *Troutman,* 287 Or at 210, the court focused on the plaintiff's knowledge of the facts alleged in the second case in time to have given evidence of them at the trial of the first case. More recently, in *Hodges v. Blazer Homes, Inc.,* 204 Or App 86, 94, 129 P3d 196 (2006), we held both that "claim preclusion cannot

August and the alleged conspiracy occurred in early or mid-September of the same year. No facts alleged in the second action occurred after the plaintiffs filed the first action. The court then moved to the second criterion, space. The wrongful acts in both cases involved the same parcel of property and occurred in the same town and, in part, in the same building. The third criterion, origin, the court explained, referred to what caused the harm about which the plaintiffs complained. In *Whitaker*, the harm in the first action was that the defendants had breached their contract to make cash advances, while in the second action it was that they had ceased making those advances as part of a conspiracy to avoid the contract. Each kind of harm damaged the plaintiffs' cash flow when the defendants did not resume their cash payments. The harms, thus, had a common origin. The fourth criterion was motivation. The defendants' motivation in each action was to avoid performing the contract, although the court recognized that the plaintiffs could argue that a motivation to coerce a new and more favorable deal was not the same as a motivation to abandon with impunity an old one. The fifth criterion was convenience, which referred to the ability of the plaintiffs to try their various claims in a single proceeding. The more complex and distinct each claim is, the less convenient it is to try them all together. In *Whitaker*, many of the witnesses and proof would have overlapped; indeed, many of the factual allegations in the second case involved the original agreement that was at issue in the first. *Id.* at 456-58. In short, the first five criteria suggested preclusion.

By contrast, the sixth criterion, similar acts, did not weigh significantly one way or the other. That criterion focuses not on the harm that the defendant caused, as does origin, the third criterion, but on the acts that caused the harm. The argument for preclusion is stronger when two separate acts combine to cause a single form of harm. In *Whitaker*, the acts in the first action were not the tortious acts alleged in the second; thus, the second action would

---

apply if the party asserting a second claim lacked actual or constructive knowledge of its availability when the party asserted the first claim," *id.*, and that the two claims could not have been brought together if the plaintiff did not have actual or constructive knowledge of the second claim "when the first claim was tried[.]" *Id.* at 95. We do not need to resolve that uncertainty at this time because, under either approach, the time criterion does not lead to preclusion in this case.

require some different witnesses and evidence than would the first. On the other hand, the harm caused—loss of cash flow at a crucial time, creating pressure on the plaintiffs to compromise or abandon their contract—was almost unitary. After rejecting a number of the plaintiffs' other arguments, and considering all the criteria and relevant case law, the court concluded that, "[i]n a single and convenient proceeding, plaintiffs could have sought relief for all the harm done to them as a result of defendants' persistent refusal to fulfill their contractual obligations." *Id.* at 462. It therefore affirmed the dismissal of the plaintiffs' claims against Thiel Creek and Diers. *Id.* at 458-63.

Later cases have expanded somewhat on the court's discussion in *Whitaker*. In *Lee v. Mitchell*, 152 Or App 159, 953 P2d 414 (1998), the issues involved a broad series of facts, extending over a great period of time. However, because the issues that the plaintiffs raised in the first action implicated so many aspects of the parties' relationships, and because the issues involved in the relevant claim in the second action were similar to those issues and fit squarely in the middle of the time frame of the first action, that claim was precluded. On the other hand, a different claim that involved events that occurred before the events at issue in the first case, and breaches of fiduciary duty rather than breaches of contract, was not precluded. *Id.* at 171-72. In *Helton v. Phillips*, 155 Or App 217, 963 P2d 100 (1998), an arbitration award that concerned the defendant's rights and conduct as an employee of a business was factually distinct from the plaintiff's tender of payment for the defendant's shares after the defendant's termination as an employee of the corporation and from a later sale of the business. Thus, the arbitration award did not preclude the defendant's subsequent claims related to his rights as a shareholder. *Id.* at 224. Finally, in *Hodges v. Blazer Homes, Inc.*, 204 Or App 86, 129 P3d 196 (2006), there was no claim preclusion because the plaintiff did not know the facts that were the basis for the second action at the time of trial of the first action.

■ After considering all of the *Whitaker* criteria, we conclude that plaintiffs' claims in the present case are not precluded. As the court suggested in *Whitaker*, those criteria do not yield a formula that will provide an answer in some

mathematically precise fashion. Rather, they are guides for the court's use in answering the ultimate question—whether the apparently separate events fit into a common legal framework that the judicial system should resolve in a single proceeding. In *Whitaker*, an essential basis for the court's decision was that all of the issues arose, in one form or another, from the contract between the plaintiffs and Thiel Creek. In this case, that essential unity of issues does not exist. Rather, there is a fundamental legal and factual difference between the contractual issues that the judgments in the ECI and consolidated cases resolved and the fraudulent transfer issues that are involved in this case. That difference is, ultimately, the reason that defendants' claim preclusion arguments fail. We turn to the specific criteria.

The first criterion, time, militates against preclusion. Plaintiffs did not discover the fraudulent transfers until shortly before a firm trial date in the consolidated cases, which was well after plaintiffs filed their claims in those cases. It is at least questionable whether plaintiffs could have pleaded and tried their fraudulent conveyance claims in the time between their original discovery of some of the transfers and the established trial date. At least some of the transfers occurred after the filing of the claims for breaches of contract, when defendants attempted to protect themselves from the consequences of plaintiffs' efforts to enforce the contract. On the other hand, the space criterion may lean slightly in the other direction, because defendants both breached the contract and made the fraudulent transfers from the same business location. In light of the other criteria, however, space is of little weight in this case.

The significance of the third criterion, origin, is substantially greater in this case than that of the first two. Origin refers to the source of the harm about which plaintiffs complained. In the consolidated cases, the source of harm was defendants' breaches of contract, which caused the damages to plaintiffs for which they received judgments. The judgment in those cases, together with the earlier judgment in the ECI case, resolved all issues related to the contract. Those issues, however, were not the source of plaintiffs' harm in this case. Rather, that source was defendants' effort to avoid paying the judgments in the consolidated cases by

wrongfully transferring their assets. One could argue that that source was related to the breaches in that both harms were the result of defendants' attempts to avoid paying plaintiffs what they owed. Such an argument would suggest, however, that the harm that arises from difficulty in collecting a judgment has the same origin as the harm that led to the judgment in the first place. We do not think that the Supreme Court intended such a broad scope for this criterion. Defendants' actions took place in two different legal contexts. In the first context, defendants breached their contracts and became subject to judgments that required them to pay the damages that plaintiffs incurred as a result. In the second context, defendants attempted to avoid paying those judgments. Although the two sets of harm related to the same money obligations, legally they had separate origins.

The same distinction applies to the fourth criterion, motivation. In *Whitaker*, the defendants' motivation in each action was to avoid performing the existing contract. Here, defendants' motivation in the earlier proceedings was to avoid performing the contract, while their motivation in this action was to avoid paying the judgments that plaintiffs obtained in the earlier proceedings. Those motives may have been similar in that both resulted in efforts to receive the benefit of ECI's assets without making the agreed payments, but the legal focus in each instance was distinct. A motive to breach a contract is different from a motive to hide assets. It follows that the criteria of origin and motivation militate against preclusion.

The fifth criterion is the convenience of trying the cases in a single proceeding. The pleadings in this case contained some of the same allegations as did the pleadings in the consolidated cases, and there would be some overlapping evidence. The fundamental issues in the two actions, however, would be different. Evidence to support a fraudulent transfer claim would focus on the circumstances surrounding the transfers, which were unrelated to defendants' obligations under their contracts with plaintiffs. The same consideration applies to the sixth criterion, similar acts. Here, unlike in *Whitaker*, defendants' separate acts did not combine to cause a single form of harm, and the harms that defendants' acts caused were not unitary. The harm in the

ECI and consolidated cases flowed from defendants' breaches of contract; the harm in this case was the result of defendants' attempts to avoid paying the judgments in the earlier actions.

Considering all of the relevant criteria, we conclude that the fraudulent transfers and the breaches of contract were not parts of a connected series of transactions. Rather, they were separate transactions that had separate origins and motives. The trial court did not err in denying defendants' motion for summary judgment on plaintiffs' second claims to avoid the fraudulent transfers. It also did not err in allowing plaintiffs to assert their conspiracy claim, construed as a claim for damages arising from the fraudulent transfers, in their amended complaints.

In their second and third assignments of error, defendants assign error to the trial court's permitting plaintiffs to file the amended complaints and its denial of defendants' ORCP 21 motion to strike the first claim for relief from the second amended complaint, on the ground that the first claim in both amended complaints was identical to the first claim in the original complaint on which the trial court previously had granted summary judgment for defendants. The trial court did not err in either respect. When the court granted defendants' original motion for summary judgment against plaintiffs' first claim, it indicated that it would permit a claim that was, in essence, one under ORS 95.270 for damages for impairment of a fraudulently transferred asset. As we have discussed, that is how plaintiffs and the trial court treated the first claim in the amended complaints. So construed, the amended complaints did not violate the court's ruling on the motion for summary judgment, and the second amended complaint was not vulnerable to defendants' ORCP 21 motion.

Affirmed.